**INDUSTRIAL INDEMNITY COMPANY,** a corporation; **S.L.S. Construction Company d/b/a Pacific Construction Company, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

No. 90–3889C.

United States Claims Court.

July 14, 1992.

Lynn B. Larsen, Salt Lake City, Utah, for plaintiffs. A. Dennis Norton and Max D. Wheeler, of counsel.

Arnold M. Auerhan, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Anthony R. Crouse, Dept. of Navy, of counsel.

LAWRENCE S. MARGOLIS, Judge.

This case is before the court on defendant's motion to dismiss. Defendant contends, among other things, that plaintiff Industrial Indemnity Corporation (IIC) submitted improperly certified claims to the contracting officer and that consequently this court lacks jurisdiction over its causes of action. Defendant also contends that this court is without jurisdiction as to the cause of action of plaintiff S.L.S. Construction Company d/b/a Pacific Construction Company (PACCO) because the claim is one for consequential damages. After careful consideration and after having heard oral argument, this court grants the defendant's motion to dismiss.

## FACTS

On December 30, 1983, PACCO and the Department of the Navy entered into an $8,222,222 contract for the demolition, remodeling, and construction of enlisted personnel housing at Camp Pendleton, California. Two weeks later, on January 12, 1984, IIC issued payment and performance bonding on the project. After receiving a notice of default from PACCO on November 7, 1984, defendant terminated the PACCO contract on November 16, 1984.

On February 14, 1985, IIC and the defendant entered into a takeover agreement, in which IIC agreed to takeover and complete performance of the PACCO contract. The takeover agreement incorporated "all of the General and other Provisions" of the PACCO contract, but stated that it did not "affect the outstanding claims and change order requests of the defaulted Contractor arising under the defaulted Contract."

IIC submitted a claim to the contracting officer on October 26, 1988, which alleged, among other things, that PACCO had been improperly terminated for default. On March 31, 1989, IIC submitted a second claim to the contracting officer, this time seeking the contract balance and interest for late payments under the takeover agreement. Both claims were certified by Robert J. Alexander (Alexander), whose title was given as Bond Counsel of IIC.

Three days after having filed suit in this court on October 29, 1990, PACCO and IIC submitted a $1,400,000 claim to the contracting officer for the loss of value of PACCO's business. This claim was certified by Alexander as well as by J.L. Lamberson, whose title was given as President of PACCO. Plaintiffs followed the latest claim with the filing in this court of an amended complaint on January 22, 1991.

In the amended complaint, IIC alone maintains ten causes of action, and both IIC and PACCO bring the eleventh cause of action for breach of the PACCO contract. Three of IIC's causes of action relate to the PACCO contract and the other seven concern the takeover agreement between the defendant and IIC. PACCO and IIC assert jurisdiction in this court under the Tucker Act, and the Contract Disputes Act, 41 U.S.C. § 601 et seq. (CDA).

## DISCUSSION

■ Defendant moves to dismiss on several grounds. First, defendant argues that this court is without jurisdiction over the IIC claims because the certifying official in question, Alexander, did not meet the requirements of the CDA. According to Fed-

eral Acquisition Regulation 33.207(c)(2), 48 C.F.R. § 33.207(c)(2) (1988), if the contractor is not an individual, the certifier of a claim shall be:

(i) A senior company official in charge at the contractor's plant or location involved; or

(ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

The parties agree that IIC is a "contractor" for definitional purposes. Defendant maintains that Alexander, as IIC's certifier, fails to satisfy either prong of this regulation.[1] IIC concedes that Alexander was not "[a]n officer ... of the contractor" and therefore does not qualify as a certifier under the second prong. § 33.207(c)(2)(ii).

Regarding the first prong, the Federal Circuit has ruled that the certifying official must have maintained "a physical presence at the location of the primary contract activity" to satisfy the "plant or location involved requirement" of § 33.207(c)(2)(i). *United States v. Grumman Aerospace Corp.,* 927 F.2d 575, 580 (Fed.Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 330, 116 L.Ed.2d 270 (1991). Given that IIC admits in its brief in opposition to the defendant's motion to dismiss that Alexander was not physically located at the construction site—the primary contract activity, IIC has not satisfied the first prong of the regulation. *See National Surety Corp. v. United States,* 20 Cl.Ct. 407, 411–12 (1990) (authority suggests "plant or location involved" means the job site). Contending that Alexander spent an adequate amount of time at Camp Pendleton to satisfy the first prong of the regulation, IIC cites *Algernon Blair, Inc.,* 91–2 BCA (CCH) ¶ 23,920, 1991 WL 58037 (ASBCA Apr. 5, 1991), in which the Armed Services Board of Contract Appeals ruled that a certifier could spend as little as 10 to 20 percent of his time at a job site and satisfy the *Grumman* "physical presence" requirement. Although not bound by decisions of the Board, this court notes that, according to Alexander's own deposition testimony, he made only one visit to the construction site. Such cannot be construed to mean "in charge *at* the ... location involved...." 48 C.F.R. § 33.-207(c)(2)(i) (1988) (emphasis added). Because Alexander could not properly certify the claims and the certifications are therefore invalid, this court does not possess jurisdiction over the first ten causes of action or the eleventh cause of action, as it pertains to IIC. *See Grumman,* 927 F.2d at 579.

■ The remaining plaintiff, PACCO, maintains in the eleventh cause of action that as a result of the defendant's breaches of the contract with PACCO, it "became insolvent and was forced to stop doing business, lay off all employees and liquidate its assets."[2] Amended Complaint ¶ 87. PACCO seeks the "reasonable value of PACCO at the time of the breaches," alleging damages "not yet fully determined but believed to be in excess of $1,400,-000.00." Amended Complaint ¶ 88–89. Defendant argues that PACCO's claim is too remote and speculative to permit recovery.

Finding merit in defendant's argument, this court dismisses PACCO's cause of action under the rationale of *William C. Ramsey v. United States,* 101 F.Supp. 353, 121 Ct.Cl. 426 (1951), *cert. denied,* 343 U.S. 977, 72 S.Ct. 1072, 96 L.Ed. 1369 (1952). There the plaintiffs alleged that defendant's failure to pay money due under a contract caused the financial difficulties and ultimate bankruptcy of plaintiffs' corporation. *Id.,* 101 F.Supp. 353, 121 Ct.Cl. at 433. In a motion for judgment on the pleadings, the Court of Claims ruled that the putative damages resulting from the alleged breach were remote and not the inevitable consequence of such a breach. *Id.* The court noted that even without the

---

1. This court assumes, without deciding, that Alexander is an employee of IIC, rather than, or in addition to, Industrial Indemnity Financial Corporation, a sister corporation to IIC. As a ground for dismissal, defendant contends that Alexander actually is employed by the latter.

2. Among other things, PACCO alleges in the eleventh cause of action that defendant improperly changed the contract, violated the payment terms of the contract, and improperly terminated PACCO.

contract breach, there was no assurance that the corporation would have remained solvent. *Id.* Because the court determined that the connection between the alleged breach and the damages was remote, it disallowed the plaintiffs' claim for reorganization expenses. *Id.*

In the instant case, PACCO seeks its value as a going concern prior to the alleged breaches, which it estimates at $1,400,000. As in *Ramsey*, this court cannot conclude that the alleged contract breaches "naturally and inevitably produce" insolvency, and thus result in the damages PACCO seeks. *Id.* PACCO argues that damages were foreseeable at the time of breach, presenting evidence in the form of a Defense Department memorandum dated March 20, 1985 that defendant was on notice of its financial difficulties. Contrary to PACCO's position, foreseeability in the context of consequential damages is measured from the time a contract is made, rather than from the time of breach. *See Northern Helex Co. v. United States*, 524 F.2d 707, 714–15, 207 Ct.Cl. 862 (1975). Nothing indicates that as of December 30, 1983, the date of contract execution, defendant had any knowledge that PACCO could be financially vulnerable to the types of breaches alleged. Accordingly, this court concludes that PACCO's claim for its business value should not be permitted.

## CONCLUSION

The court grants defendant's motion to dismiss without prejudice as to IIC because the claims at issue were not properly certified.[3] The court also grants the motion to dismiss with prejudice as to PACCO because PACCO seeks consequential damages. Accordingly, the clerk shall dismiss the complaint. No costs.

---

**3.** Because of the rulings, *supra,* concerning certification and PACCO's cause of action, this court need not reach the defendant's other grounds for dismissal.